UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHAMIKA FOUNTAIN,
        Plaintiff,

v.

NANCY A. BERRYHILL,
        Defendant.

---

DECISION & ORDER
17-CV-6172

## Preliminary Statement

Plaintiff Shamika Fountain ("plaintiff" or "Fountain") brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), which denied her application for disability insurance benefits. See Complaint (Docket # 1). Presently before the Court are competing motions for judgment on the pleadings. See Docket ## 12, 14. For the reasons explained more fully below, plaintiff's motion for judgment on the pleadings (Docket # 12) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 14) is **denied**, and the case is remanded.

## Background and Procedural History

On July 15, 2013, plaintiff protectively applied for supplemental security income under Titles II and XVI of the Social Security Act, alleging panic attacks, depression, anxiety and a back injury, with an alleged onset date of December 1, 2009. Administrative Record ("AR") at 209-16, 241. Plaintiff's application was initially denied. AR at 83-102. Plaintiff, her

1

attorney, and vocational expert Carol McManus ("the VE") appeared before Administrative Law Judge John P. Costello ("the ALJ") on June 23, 2015 for an administrative hearing. AR at 44-82. The ALJ issued an unfavorable decision on September 3, 2015. AR at 24-39. Plaintiff appealed to the Appeals Council ("AC") and the AC denied plaintiff's appeal on January 25, 2017. AR at 1-6. Plaintiff filed this action on March 24, 2017 (Docket # 1), and filed her motion for judgment on the pleadings on October 20, 2017 (Docket # 12). The Commissioner filed her motion for judgment on the pleadings on December 13, 2017. Docket # 14. Fountain replied on January 11, 2018 (Docket # 15), and the Court held oral argument on March 6, 2018 (Docket # 19).

For purposes of this Decision & Order, the Court assumes the parties' familiarity with the medical evidence, the ALJ's decision, and the standard of review.

## Discussion

After reviewing the entire record, I determine remand is required because the ALJ did not properly evaluate the opinions of plaintiff's treating physician, Dr. Tiffany Pulcino, and plaintiff's treating mental health therapist, Elizabeth Zinn, LCSW. As set forth below, both treating sources diagnosed plaintiff with significant mental health disorders and consistently treated plaintiff for those disorders for an extended period. Their opinions as to plaintiff's non-exertional

2

limitations, as set forth in numerous psychological assessment forms and corroborated by their treatment notes, were given "little weight" by the ALJ. As set forth below, those opinions, if properly evaluated and credited, would have supported a determination that plaintiff was disabled from full-time competitive employment for a closed period of time in excess of 12 months.

<u>Dr. Pulcino's Opinion</u>: Plaintiff submits that the ALJ erred by assigning "limited weight" to the mental health assessment of plaintiff's treating physician, Dr. Pulcino. I agree.

Under the "treating physician rule,"[1] the ALJ must afford "a measure of deference to the medical opinion of a claimant's treating physician." See <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004); 20 C.F.R. § 404.1527(d)(2). Accordingly, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight," so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2)); see, e.g., <u>Green-Younger</u>, 335 F.3d 99, 106 (2d Cir. 2003); <u>Shaw v. Chatter</u>, 221 F.3d 126, 134 (2d Cir. 2000).

---

[1] These rules were in effect at the time plaintiff's claim was filed.

3

The Social Security Administration is required to explain the weight it gives to the opinions of treating physicians. 20 C.F.R. § 404.1527(d)(2) ("[W]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). This is true even when the treating source's opinion is given controlling weight, but especially true if the opinion is not given controlling weight. See Burgess, 537 F.3d at 129. The ALJ must consider, inter alia, the

> [l]ength of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.

Id. (internal quotations omitted, citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5)). "After considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Greek v. Colvin, 802 F.3d 370, 375 (2d. Cir. 2015) (citing Burgess, 537 F.3d at 129). The failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999); see also Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) ("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.").

In the assessment at issue here, Dr. Pulcino opined that plaintiff had moderate limitations (unable to function 10-25% of the time) in following and understanding directions, completing simple and complex tasks independently, maintaining attention, and performing low stress simple tasks. AR at 288. Dr. Pulcino further opined that plaintiff was very limited (unable to function 25% or more of the time) in capacity to maintain a regular routine and schedule. She noted that plaintiff would be unable to participate in activities except treatment for six months. AR at 288. According to the VE, this opinion, if credited, would have compelled a finding that plaintiff was disabled. AR at 77.

The ALJ discredited Dr. Pulcino's treating opinion because (1) it was rendered "for eligibility and exemption from work for the department of human services," (2) plaintiff participated only in intermittent therapy, and (3) the opinion was limited for a period of six months. AR at 34-35. Although it is widely recognized that courts do not require "slavish recitation of each and every factor" in considering how much weight to afford a treating physician (Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013)), the ALJ's explanations for discrediting Dr. Pulcino's opinion do not satisfy either the spirit or the letter of the treating physician rule.

First, Dr. Pulcino's opinion should not have been discredited simply because it was rendered for the Department of Human

5

Services. That is not an enumerated factor described above in determining the weight to afford to a treating physician opinion, nor is it relevant. See Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 199 n.2 (2d Cir. 2010) ("The mere fact that a medical report is provided at the request of counsel, or more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of a report.") (quoting another source). To be sure, the purpose for which the report was generated may be a relevant factor, but not where, as here, Dr. Pulcino's treatment records – and those from other treating professionals – from around the same time fully corroborated Dr. Pulcino's opinion. ALJs regularly rely on treatment notes and physician opinions even when they were not rendered for purposes of social security disability. The critical issue is not who the form was submitted to, but whether the findings and opinions expressed therein are relevant to determining whether plaintiff is capable of engaging in full-time employment in a competitive work environment. The ALJ makes no attempt to explain why the findings and opinions expressed in this particular form are not probative simply because the ultimate recipient of the form was the Department of Human Services. Moreover, Fountain's extensive treating relationship with Dr. Pulcino, as well as the abundance of confirmatory treatment records from around the same time should have sufficiently established the reliability of Dr. Pulcino's

6

opinion, irrespective of the reason for which it was created.

The ALJ gave two other reasons for discounting the opinion of plaintiff's treating doctor. According to the ALJ, the opinion of Dr. Pulcino is entitled to less weight because plaintiff "only participates in intermittent therapy." AR at 35. It is unclear what this cryptic reference to "intermittent therapy" means and the ALJ does not elaborate further in his decision. However, the ALJ cites to Exhibit 9E (AR at 286) which is a January 13, 2013 Psychological Assessment completed by Dr. Pulcino in which Dr. Pulcino notes that plaintiff's psychiatric history includes "intermittent psychotherapy." (The ALJ's citation to and reliance on this particular form as justification for discounting the opinion of Dr. Pulcino is somewhat ironic since this is the same form the ALJ found to be untrustworthy because it was completed for the Department of Social Services.) In any event, unless one is hospitalized, most psychotherapy can be classified as intermittent. Intermittent does not necessarily mean irregular or sporadic and indeed, in a letter dated July 20, 2015, plaintiff's treating therapist made the ALJ aware that at that point in time she had already seen plaintiff on <u>36 separate occasions</u> for psychotherapy. AR at 828. Such regular attendance for mental health treatment hardly seems like a good reason to discount treating source opinions because they were "intermittent."

The third and final reason given by the ALJ for not crediting

7

the opinions of Dr. Pulcino was that her opinion was "only limited for a period of six months." AR at 35. Again, this is not a fair assessment of either the opinion stated or the record as a whole. Dr. Pulcino indicated on the assessment form that plaintiff was "unable to participate in any activities except treatment or rehabilitation" for an "<u>Expected</u> Duration" of six months. AR at 288 (emphasis added). That language does not limit Dr. Pulcino's opinion to six months or opine that plaintiff's condition would only last six months and no longer. Rather, just as it says, the opinion indicates that at the time she completed the form Dr. Pulcino <u>expected</u> plaintiff to be unable to <u>participate in other activities</u> for a period of six months. The record here pays tribute to the fact that plaintiff's mental health conditions and her need for treatment lasted far longer than six months. At the very least, the ALJ was under an obligation to ascertain the treating physician's opinion on when the plaintiff could return to work. <u>Moreira v. Colvin</u>, No. 13 CIV 4850 JGK, 2014 WL 4634296, at *6 (S.D.N.Y. Sept. 15, 2014) (finding that subsequent evaluations indicating improvements required ALJ to develop the record with respect to the treating physician's reports). "Where . . . an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly . . . ." <u>Corbeil v. Colvin</u>, No. 12-CV-0114 MAT, 2015

8

WL 1735089, at *7 (W.D.N.Y. Apr. 16, 2015) (internal quotation marks omitted).

Even more important, the ALJ did not find that Dr. Pulcino's opinion was inconsistent with the rest of the record. This is so because LCSW Zinn's opinions - the only other opinion source from around the same time as Dr. Pulcino's opinion - align with Dr. Pulcino's assessment. For example, on April 18, 2013, LCSW Zinn opined that plaintiff was moderately limited in capacity to maintain attention and to perform low stress simple tasks but was very limited in capacity to perform simple and complex tasks independently and capacity to maintain a routine and schedule. AR at 292. She expected plaintiff to be limited for six months. Seven months later, on November 12, 2013, LCSW Zinn opined that plaintiff would be moderately limited in capacity to maintain attention, capacity to regularly attend to a routine and schedule, and capacity to perform low stress and simple tasks, and would be so limited for six more months. AR at 300. Six months after that, plaintiff saw LCSW Zinn for a follow-up in which LCSW Zinn opined that plaintiff would be moderately limited in ability to perform simple and complex tasks independently, capacity to maintain attention, and capacity to perform low stress and simple tasks. AR at 323. She opined that plaintiff would be very limited in capacity to attend to a regular schedule or routine and that these limitations could expected for an additional year. AR at 323. In

9

addition, other treatment records from around that time (and even earlier into 2012) extensively document plaintiff's depression and anxiety and support Dr. Pulcino's findings. See, e.g., AR at 416-28. Plaintiff's mental health impairments continued through at least summer and early fall of 2013. See AR at 383, 400. Even on January 27, 2014 – over one year after Dr. Pulcino's initial assessment – Dr. Pulcino increased plaintiff's medication dosage due to her reports of depression. AR at 527. In sum, plaintiff's continued mental health treatment after Dr. Pulcino's initial assessment not only corroborated the substance of Dr. Pulcino's opinion that she had limited functionality, but also confirmed that plaintiff continued to be so limited for over a year.

It is also problematic that the ALJ rejected parts of Dr. Pulcino's opinions and fully adopted other parts without adequate explanation or reasoning. The ALJ gave limited weight to Dr. Pulcino's opinion that plaintiff had a GAF score of 40; was moderately limited in ability to follow, understand and remember instructions, perform simple tasks and maintain attention and concentration and perform low stress and simple tasks; was very limited in ability to attend to a regular schedule; and was not limited at all in ability to maintain a basis for hygiene and grooming. AR at 34. But at the same time the ALJ gave "significant weight" to the opinion from the very same doctor that found plaintiff was very limited in the ability to push, pull, bend,

10

lift and carry; moderately limited in ability to walk and stand; and not limited at all in ability to sit. AR at 34. The incongruity with which the ALJ evaluated different opinions from the same treating physician underscores the need to remand for further analysis or explanation. Strange v. Comm'r of Soc. Sec., No. 6:13-CV-527 GLS/ESH, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014) ("Reviewing courts, therefore, reverse administrative decisions for lack of substantial evidence when they determine that an administrative law judge 'cherry picked' the evidence, i.e., relied on some statements to support a conclusion, while ignoring other substantive detail to the contrary from the same source without articulating plausible reasons.").

LCSW Zinn's Opinion: Even though LCSW Zinn, as a licensed social worker, is not considered an acceptable medical source (see 20 C.F.R. § 404.1513(d) and § 416.913; SSR 06-03p, 2006 WL 2329939), such sources can be credited when "the 'non-medical source' has seen the individual more often and has greater knowledge of the individual's functioning over time and if the 'non-medical source's' opinion has better supporting evidence and is more consistent with the evidence as a whole." Love v. Colvin, No. 15-CV-6130, 2016 WL 5793424, at *8 (W.D.N.Y. Sept. 30, 2016) (quoting SSR 06-03p, 2006 WL 2329939 (SSA Aug. 9, 2006)); Mikrazi v. Colvin, No. 15-CV-698, 2016 WL 5110035, at *9 (W.D.N.Y. Sept. 21, 2016). SSR 06-03p states that information from "'other

sources' cannot establish the existence of a medically determinable impairment," but "information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." 2006 WL 2329939, at *2.

Opinions from these medical sources, although "not technically deemed 'acceptable medical sources' under [the] rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. at *3. In weighing opinion evidence from non-medical sources, ALJs may consider, inter alia, how long the source has known and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, and whether the source has a specialty or area of expertise related to the individual's impairment(s). Id. at *4-5

The ALJ dismissed LCSW Zinn's opinions because they were time-limited and were inconsistent with the medical evidence of record. AR at 35-36. But LCSW Zinn's reports are actually consistent with medical sources such as plaintiff's treating physician. Indeed, the ALJ dismissed LCSW Zinn's report from April 18, 2013 - the closest in time and content to Dr. Pulcino's January 13, 2013

12

opinion – for the same reasons he dismissed Dr. Pulcino's opinion. As explained above, the medical opinions seem to indicate that plaintiff was moderately to very limited in mental functioning in winter and spring 2013 but may have made some improvements by fall 2013. However, by spring 2014, plaintiff was again moderately limited. As plaintiff's treating therapist, LCSW Zinn assessed plaintiff dozens of times more than any consultative evaluator. The ALJ should have considered the frequency with which LCSW Zinn saw plaintiff when deciding what weight to assign the opinions.[2]

Closed Period of Benefits: As discussed above, where, as here, an ALJ does not provide "good reasons" for not crediting the opinion of a treating physician, remand is required. Snell, 177 F.3d at 133. That being said, disability is not necessarily permanent and here there is evidence that the plaintiff's condition improved over time. Disability benefits may be awarded if a claimant is unable to participate in substantial activity for 12 months or more. 42 U.S.C. § 423(d)(1). "A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status."

---

[2] Finally, the ALJ may have also erred by failing to address or weigh two of LCSW Zinn's opinions. Neither the November 12, 2013 nor the May 20, 2015 evaluations are discussed in the ALJ's RFC. See Barrett v. Colvin, 211 F. Supp. 3d 567, 581 (W.D.N.Y. 2016) ("Remand is required when an ALJ fails to adequately evaluate the weight of a medical opinion in light of the factors set forth in 20 C.F.R. § 404.1527(c)."). Because I remand for other reasons, I will not explore this argument further.

Carbone v. Astrue, No. 08-cv-2376 2010 WL 3398960, at *13 n.12 (E.D.N.Y. Aug. 26, 2010) (internal quotation marks omitted). If a plaintiff is disabled for any period of time, "the ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of his claim." Williams v. Colvin, No. 15-cv-144, 2016 WL 3085426, at *4 (W.D.N.Y. June 2, 2016) (internal quotation marks omitted). On remand, the Commissioner should consider whether there is substantial evidence that the plaintiff was disabled from competitive employment for a specific period of time in excess of 12 months and has since recovered, thus entitling her to benefits for that closed time period.

## Conclusion

For the reasons explained above, plaintiff's motion for judgment on the pleadings (Docket # 12) is **granted**, the Commissioner's motion for judgment on the pleadings (Docket # 14) is **denied**, and the case is remanded for further proceedings consistent with this Decision & Order.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: September 27, 2018
Rochester, New York